**Don PIERCE, et al., Plaintiff,**

**v.**

**COMMERCIAL WAREHOUSE, et al., Defendants.**

**No. 86–203–CIV–T–17.**

United States District Court, M.D. Florida, Tampa Division.

June 22, 1992.

Britt Whitaker, Joseph R. Fritz, P.A., Tampa, Fla., for plaintiffs.

Paul A. Saad, Sylvia H. Walbolt, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., and John C. Vogt, Jr., Tampa, Fla., for Parts and Equipment Distributors, Inc. and Commercial Warehouse Div., Thompson Automotive Parts.

R.L. Edwards, James W. Middleton, Kimbrell & Hamann, P.A., Miami, Fla., for Gates Rubber Co., Inc.

Marc L. Fleischaker, Michael M. Eaton (Trial Counsel), Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., Michael A. Fogarty, Glenn, Rasmussen, Fogarty, Merryday & Russo, Tampa, Fla., for Fel–Pro, Inc.

John T. Cusack, Gardner, Carton & Douglas, Chicago, Ill., for Sealed Power Corp.

James MaCayeal, Gardner, Carton, & Douglas, Chicago, Ill., for defendants.

Thomas D. Yannucci, Jeffrey A. Rosen, Kirkland & Ellis, Washington, D.C., for Federal Mogul.

Jim Allen, Commercial Warehouse, Tampa, Fla., for Commercial Warehouse.

C. Wade Yeakle, III, Yeakle, Janssen and Watson, P.A., St. Petersburg, Fla., for United Equipment Sales, Inc.

James M. Porter, Squire, Sanders & Dempsey, Miami, Fla., for McGraw–Edison.

R. Frederick Melin, Tampa, Fla., for Tampa Brake and Supply Co., Inc.

Charles W. Pittman, MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for Federal Mogul Corp.

Robert R. Vawter, Jr., Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for Bendix/Allied Corp.

Keith R. Rounsaville, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, Fla., for EMB Brake and Automotive Supply.

Charles F. Ketchey, Jr., and Michael Addison, Addison, Ketchey & Horan, Tampa, Fla., Burns & Levinson, James F. Kavanaugh and David Rosenblatt, Boston, Mass., for Arrow Automotive Indus.

## ORDER ON MOTION FOR SANCTIONS

KOVACHEVICH, District Judge.

This cause is before the Court on the following:

Dkt. 264 Defendants' Motion for Sanctions
Dkt. 265 Memorandum
Dkt. 296 Supplemental Memorandum
Dkt. 297 Plaintiffs' response
Dkt. 298 Memorandum
Dkt. 300 Defendants' Reply.

Plaintiffs have requested oral argument. The Court finds that an evidentiary hearing is not necessary; the request for oral argument is denied. Partial Joinder of Defendants (Dkt. 271) is granted.

Defendants seek entry of sanctions as to Plaintiffs on the basis of four allegedly frivolous and vexatious motions:

1. Plaintiffs' Sherman Act claims;
2. The class action/representative claim of J.A.B.B.;
3. Plaintiffs' motion for summary judgment;
4. Plaintiffs' motion for new trial.

Rule 11, Federal Rules of Civil Procedure, mandates a reasonable prefiling inquiry with respect to the facts and the law on which a paper is based. Rule 11 specifies that papers must be well-grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law. Rule 11 further specifies that papers may not be interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Rule 11 directs the court to impose on counsel or the client sanctions, including reasonable attorney's fees for violation of the rule.

Where a motion is made, Rule 11 gives the attorney's signature the effect of certifying that reasonable factual and legal support for it exists. A court has the right to expect that counsel will state the controlling law fairly and fully. A lawyer must not misstate the law, fail to disclose adverse authority not disclosed by his opponent of which he knows or should know, or omit facts critical to the application of the rule of law relied on. If the rule on which he relies is circumscribed or conditioned so as to preclude its application to the case, he is obligated to disclose that fact. If he knows another rule such as the statute of limitations, res judicata or collateral estoppel categorically bars his client's claim, he cannot fail to disclose it in the hope that it will be overlooked. These are well-settled principles. See Schwarzer, "Sanctions under the New Federal Rule 11—A Closer Look," 104 F.R.D. 181, 201 (1985).

Rule 11 requires that an attorney argue by analogy or extension from existing law; he can urge that existing law should lead to a result in the particular case even if that issue has not been ruled on. What an attorney cannot do is to mislead the court by contending that his argument is supported by existing law in the sense that the issue has been decided when that is not true. An attorney must be clear in presenting his argument for what it is—if acceptance of the argument would require the extension, modification or reversal of existing law, Rule 11 requires disclosure and precludes presentation of the argument as though it rested on existing law.

Rule 11 is further directed at papers which are found to be interposed for an improper purpose, such as to delay, hinder or to needlessly increase the cost of litigation. The Court is not required to delve into the attorney's subjective intent in filing his papers; Rule 11 incorporates an objective standard. Improper purpose may be shown by excessive persistence in pur-

suing a claim or defense in the face of repeated adverse rulings or by obdurate resistance out of proportion to the amounts or issues at stake. Rule 11 is intended to reduce frivolous claims and to deter costly meritless maneuvers, thereby eliminating delay, and reducing the cost of litigation.

 The Court is reminded that it must "avoid using the wisdom of hindsight" and must test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted. Reasonable inquiry includes consideration of the amount of time available to the signer, whether the signer had to rely on his client for information, whether the pleading sets forth a plausible view of the law, or whether the signer depended on another member of the bar.

 The purpose of Rule 11 is to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, thus avoiding unnecessary delay and expense in litigation. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (citing Report of the Judicial Committee on Rules of Practice and Procedure, App. C (Mar. 9, 1982) (letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules), reprinted in 97 F.R.D. 190, 192 (1983)); see also Advisory Committee Note. "Rule 11 sanctions are designed to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'" *Donaldson*, 819 F.2d at 1556 (Quoting Advisory Committee Note).

## FINDINGS OF FACT

1. In their February 21, 1986 verified Complaint, Plaintiffs allege a conspiracy among the Defendants to restrain and control prices, fix, maintain and stabilize prices, boycott Plaintiffs, and attempt to monopolize the automotive parts industry. Plaintiffs charged Defendants with "price fixing, exchange of price information, tying, exclusive dealing and boycott agreements and combinations as a part of an overall combination among the Defendants to control the prices, exclude competition, cartelize, restrain trade, and otherwise monopolize the sale of automotive parts on the West Coast of Florida and elsewhere." (Complaint, P. 21).

2. Defendants devoted major parts of their May 9, 1986 motions to exposing the inadequacies of these claims.

3. On June 4, 1986, Plaintiffs filed an amended complaint which abandoned all Sherman Act claims and which stated only a Robinson–Patman claim and state law claims.

4. Plaintiffs attempted to bring this action as a Rule 23 class action on behalf of J.A.B.B., an entity which was set up as a propaganda and fund-raising device for purposes of this litigation. J.A.B.B. turned out a stream of press releases and mailings to jobbers around the country, referring to this lawsuit and requesting money, when in fact this entity lacked standing to pursue the claims alleged in the Complaint.

5. In the first Complaint, the Amended Complaint and the First Amended Complaint, Plaintiffs alleged that the action was brought on behalf of themselves and all members of J.A.B.B. J.A.B.B.'s pleas for money referred to the case as a class action suit.

6. Defendants' May 9, 1986 motions to dismiss the first complaint highlighted J.A.B.B.'s lack of standing and its inability to meet the requirements of Rule 23, Fed. R.Civ.P., or Local Rule 4.04. J.A.B.B.'s standing was untenable because it did not buy or sell automotive parts and made no allegation that it had suffered injury to its own business or commercial interests. Defendants renewed these objections in their June 30, 1986 motions.

7. The Court granted Defendants' motions, following a hearing before Magistrate Wilson, at which Plaintiffs acknowledged that J.A.B.B. could not meet the requirements for a class action under Rule 23 or Rule 23.2 and a July 31, 1986 hearing before the Court, at which Plaintiffs' counsel requested the opportunity to file still another amended complaint on behalf of J.A.B.B. In its Order of July 31, 1986, the Court granted Plaintiffs leave to file an

amended complaint "assert[ing] clearly plaintiffs' standing to bring suit on behalf of an unincorporated association."

8. On August 15, 1986, Plaintiffs served their third verified complaint. The allegations concerning J.A.B.B. were only changed to add that J.A.B.B.'s members had "assigned their claims for injunctive and declaratory relief over to the unincorporated association, J.A.B.B. for enforcement." (First Amended Complaint at 2).

9. Defendants again briefed J.A.B.B.'s lack of standing. The Manufacturer Defendants filed a Motion to Dismiss Plaintiffs' Third Complaint. On October 30, 1986, the Court entered its Order of Dismissal of J.A.B.B., finding that the Third Amended Complaint "deficient as to the standing of the unincorporated association J.A.B.B. to bring this action in its representative capacity."

10. Depositions of each of the six real plaintiffs established that none of the plaintiffs had ever purchased anything from Defendants and that the indirect purchaser doctrine did not apply on the facts of this case.

11. Each Defendant made one representative available for deposition in Tampa. Defendants then moved for summary judgment, and furnished the Court with extensive deposition excerpts, affidavits and briefs to support the propriety of summary judgment for Defendants.

12. Plaintiffs argued for the applicability of the "independent purchaser doctrine" and contended that resolution of that issue should await a trial on the merits. Plaintiffs also filed a motion for partial summary judgment on the issue of Robinson–Patman Act liability. Plaintiffs relied on the indirect purchaser doctrine in their supporting memorandum, and cited the Fifth Circuit's *Hiram Walker* case, 407 F.2d 4, as if it supported their position. (Plaintiffs' Memorandum of Law and Sworn Statement of Facts, at seventh unnumbered page.)

13. Defense counsel warned Plaintiffs' counsel early and often that they would pursue Rule 11 sanctions. See Exhibit B, Dkt. 298.

14. Defendants opposed Plaintiffs' Motion for Partial Summary Judgment, and filed their own Motions for Summary Judgment.

15. On May 6, 1988, 691 F.Supp. 291, the Court ruled on the motions for summary judgment. (Dkt. 250). The Court denied Plaintiffs' motion for partial summary judgment, and granted Defendants' Motions for Summary Judgment.

16. On May 13, 1988, Plaintiffs served their "Motion for New Trial and/or Rehearing and to Alter Judgment with Supporting Memorandum and Request for Oral Argument." Defendants filed an opposition on June 2, 1988. The Court denied Plaintiffs' motion on June 6, 1988.

17. On appeal, the District Court of Appeals affirmed the order of the trial court.

CONCLUSIONS OF LAW

18. Rule 11 of the Federal Rules of Civil Procedure was amended in 1983 to provide as follows:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name ... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

19. The plain meaning of the amended rule is that every signature on a pleading certifies two things: 1) that the attorney has conducted reasonable inquiry to assure that the pleading is well grounded in fact, and warranted by existing law or constitutes a good faith argument for a change in the existing law; and 2) that the pleading has not been filed in subjective bad faith to harass the opponent or to

otherwise prolong the proceedings unnecessarily.

20. The Eleventh Circuit has held that "[t]he [1983] amendment [to Rule 11] abrogated the bad faith standard in favor of a more stringent objective standard." *Hashemi v. Campaigner Publications, Inc.,* 784 F.2d 1581, 1583 (11th Cir.1986), citing *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985).

21. The Eleventh Circuit also noted in *Donaldson v. Clark,* 786 F.2d 1570 (11th Cir.1986), that Rule 11 now imposes an objective good faith standard, such that the attorney must believe after reasonable inquiry that the contents of a pleading are well grounded both in fact and in law.

22. Because the amendments to Rule 11 have imposed an affirmative duty on attorneys to conduct an investigation into whether the statements they are making to the court are supported in fact and in law, the absence of bad faith does not prevent a violation of Rule 11. See *Mohammed v. Union Carbide,* 606 F.Supp. 252, 260 (E.D.Mich.1985).

23. As one court has explained:

Rule 11 imposes an affirmative duty on counsel to make reasonable inquiry into the viability of a pleading before it is signed. Indeed, counsel's signature is an affirmation that reasonable inquiry was in fact made ... Whether an attorney has complied with the requirements of Rule 11 is determined not by the apparent absence or presence of subjective good faith on the part of the attorney, but rather by the objective reasonableness of his action. Sanctions will therefore be imposed where the court finds that, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

*Johnson v. Veterans Administration,* 107 F.R.D. 626, 628 (N.D.Miss.1985) (citations omitted).

24. "[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." See Advisory Committee Note on Rule 11, 28 U.S.C.App., p. 576 [USCS Court Rules, Fed.Rule of Civ.Proc., Notes following Rule 11]. Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for any improper purpose.' *Cooter & Gell v. Hartmarx Corporation,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359, 374 (1990).

25. A district court may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1). (Citations omitted).... As the "violation of Rule 11 is complete when the paper is filed," (citations omitted), a voluntary dismissal does not expunge the Rule 11 violation. In order to comply with Rule 11's requirement that a court "shall" impose sanctions " '[i]f a pleading, motion, or other papers is signed in violation of this rule,' a court must have the authority to consider whether there has been a violation of the signing requirement regardless of the dismissal of the underlying action." *Cooter & Gell v. Hartmarx Corporation, supra,* 496 U.S. at 395, 110 S.Ct. at 2455, 110 L.Ed.2d at 375.

26. "Rule 41(a)(1) does not codify any policy that the plaintiff's right to one free dismissal also secures the right to file baseless papers. The filing of complaints, papers or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction.... If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to "stop, think and investigate more carefully before serving and filing papers." (Citation omitted)" *Cooter & Gell v. Hartmarx Corp., supra* at 397–98, 110 S.Ct. at 2457, 110 L.Ed.2d at 377.

27. Determining whether an attorney has violated Rule 11 involves a consideration of three types of issues. The court

must consider factual questions regarding the nature of the attorney's prefiling inquiry and the factual basis of the pleading or other paper. Legal issues are raised in considering whether a pleading is "warranted by existing law or a good faith argument" for changing the law and whether the attorney's conduct violated Rule 11. Finally, the district court must exercise its discretion to tailor an "appropriate sanction." *Cooter & Gell v. Hartmarx Corp., supra* at 399, 110 S.Ct. at 2457, 110 L.Ed.2d at 377.

28. "Although we agree that counsel's professional judgment and common sense should discourage certain claims, in most cases we prefer that an attorney feel free to exercise that judgment without fear of reprisals should his lawsuit miscarry. As we see it, Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl,* 906 F.2d 533, 538 (11th Cir.1990).

■ 29. [W]e note that given the underlying purpose of sanctions—to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations—it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay. *Durrett v. Jenkins Brickyard,* 678 F.2d 911, 916–17 (11th Cir.1982).

30. In deciding the necessary factual issues of the extent of Plaintiffs' inquiry, the Court looks to Dkt. 297, Plaintiffs' response to Defendants' motion for sanctions.

■ 31. The Court concludes that Plaintiffs and counsel for Plaintiffs violated Rule 11 by signing and filing pleadings and other items which had no factual basis, and which had no legal basis. This includes the initial complaint containing the Sherman Act claims, all complaints which mention J.A.B.B., the motion for summary judgment, and the motion for new trial. The Court directs counsel for defendants to file appropriate affidavits of all charges for work performed in those four areas. Defense counsel shall file the affidavits within fifteen days.

DONE and ORDERED.